Anthony **PORTER, Petitioner–Appellant,**

v.

**Richard B. GRAMLEY, Warden, Pontiac Correctional Center, Respondent–Appellee.**

**No. 96–2205.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1997.

Decided April 25, 1997.

Petition for Rehearing and Suggestion for Rehearing En Banc Denied June 17, 1997.

Second Petition for Rehearing Denied Aug. 26, 1997.

---

Kenneth N. Flaxman (argued), Lesley A. Redman, Chicago, IL, for Petitioner–Appellant.

Steven R. Splitt, Office of the Attorney General, Criminal Appeals Division, Linda Woloshin (argued), Cook County State's Attorney, Chicago, IL, for Respondent–Appellee.

Before FLAUM, KANNE, and EVANS, Circuit Judges.

KANNE, Circuit Judge.

On April 25, 1997, we issued an opinion in this case denying habeas corpus relief to petitioner Anthony Porter on both his ineffective assistance of counsel claim and his impartial jury claim. *See Porter v. Gramley,* 112 F.3d 1308 (7th Cir.1997). On June 17, 1997, we denied Porter's petition for rehearing and suggestion for rehearing en banc. In the original opinion, however, we decided the ineffective assistance of counsel issue under the review standard established by chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and interpreted by this court in *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc). On June 23, 1997, the U.S. Supreme Court reversed *Lindh* in part, holding that chapter 153 of the AEDPA does not apply to habeas petitions like Porter's, which were already filed on the date of the AEDPA's enactment. *See Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Although our decision regarding the impartial jury issue is unaffected because we applied pre-AEDPA law to that claim, our decision regarding the ineffective assistance of counsel claim was based on the AEDPA and must therefore be reconsidered after *Lindh.*

On June 25, 1997, we allowed Porter to file a second petition for rehearing, limited to the question of what standard of review should now be applied to Porter's ineffective assistance of counsel claim. Porter asserts that instead of receiving the deferential review we applied originally, his ineffective assistance of counsel claim deserves *de novo* review, as all mixed questions of law and fact received on habeas review prior to the AEDPA. Porter spends most of his second petition arguing

that AEDPA chapter 154–which mandates deferential review for capital cases and which *does* apply to already-filed habeas petitions—does not apply to Porter's petition because Illinois law does not satisfy certain requirements of chapter 154. We assume without deciding that Porter is correct regarding chapter 154 and that *de novo* review is therefore appropriate. Contrary to Porter's suggestion, however, we do not think the change in the standard of review mandates fresh briefing and oral argument. Although the case was originally argued assuming deferential review, the only party prejudiced by a lack of re-briefing would be the State because it originally might have failed to press its position fully, relying on the deferential standard of review to carry the day. Because we ultimately rule in favor of the State even under *de novo* review, we need no further briefing or argument.

Turning now to the merits, Porter has made numerous allegations that his trial counsel's performance was deficient, primarily in the pretrial preparation of the case. Porter asserts that his counsel failed to pursue evidence suggesting someone other than Porter was the murderer, failed to investigate fully Porter's alibi defense, failed to prepare the two alibi witnesses that were called at trial, and failed to meet with Porter except immediately before and after court proceedings.[1] The petition alleges that the representation was so deficient because Porter's family paid only $3,000 of the full $10,000 fee requested by counsel.

Porter asks for an evidentiary hearing to expand the record beyond the affidavits and statements already contained in it. As we stated in our original decision, however, "a federal hearing is mandatory only when the habeas petition has alleged facts that, if proved, entitle the petitioner to relief." *Porter*, 112 F.3d at 1314. To be entitled to relief on his ineffective assistance of counsel claim, Porter needs to show both 1) that his counsel's performance was below an objective standard of reasonableness, and 2) that a "reasonable probability" exists that, without

these unprofessional errors, "the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Strickland's "reasonable probability" language does not require a petitioner to meet a preponderance of the evidence threshold, but it does require a petitioner to show "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2067.

■ Taking all of Porter's allegations about his counsel to be true, we may assume that Porter's legal representation did fall below an objective standard of reasonableness. Although we will rarely second guess a strategic choice made after defense counsel "conducts a reasonable investigation into all lines of possible defenses," *United States v. Adamo*, 882 F.2d 1218, 1227 (7th Cir.1989), Porter's claim is that his counsel never made such an investigation. And Porter's failure to pay the agreed-upon fee is no excuse because a lawyer in such a situation should withdraw as counsel before prejudicing the client with an inadequate investigation or a lackluster defense. *See* Illinois Rules of Professional Conduct Rule 1.16(b)(1)(F). Nonetheless, we do not think that Porter's allegations regarding his counsel's performance, again taken as true, create the reasonable probability of a different outcome that *Strickland* requires. As we elaborated upon in our original opinion, the affidavits and statements that Porter has submitted are far from convincing, especially when weighed against the direct, eyewitness testimony implicating Porter. Much of the evidence suggesting that someone other than Porter committed the murders, for example, is second- and third-hand in nature, and the first-hand information (such as the affidavit stating that victim Jerry Hilliard was arguing in the park that night with someone other than Porter) can only be considered weak circumstantial evidence of Porter's innocence.

---

1. Porter also contended in his original brief his defense counsel failed to elicit testimony that Porter and victim Jerry Hilliard were friends and members of the same gang. As we demonstrated in our original opinion, however, defense counsel did present such testimony to the jury, see *Porter*, 112 F.3d at 1314.

354

Further alibi testimony, meanwhile, would only have echoed the testimony of the two alibi witnesses that the defense presented. The alibi testimony of Porter's common-law sister-in-law, Georgia Moody, was unimpeached, and it is very unlikely that calling more family members to give the same alibi testimony would have been any more persuasive to the jury. Porter suggests, however, that his counsel erred by not clarifying an alleged contradiction between Moody's testimony and the testimony of his other alibi witness, Kenneth Doyle. Doyle testified that he and Porter drank alcohol on the stoop of Porter's mother's house until around 2 a.m, whereas Moody testified that Porter and Doyle were "not to [her] knowledge" drinking that evening. Porter now argues that his counsel should have clarified that Moody misunderstood the question and was stating only that Porter and Doyle were not drinking during the limited time they were playing with her children. Contrary to Porter's suggestion, however, we do not find Moody's statement to be a contradiction, let alone a contradiction that "seriously undermined the alibi defense." Appellant's Br. at 26. Moody never suggested that she supervised Porter and Doyle the whole evening, so it was no contradiction to say that she was unaware of any drinking.

Porter also argues that his counsel should not have called Doyle as an alibi witness because Doyle had given an inconsistent statement to the police. Doyle, however, added crucial information to the defense because he, unlike Porter's family members, claimed to have stayed with Porter even after leaving Porter's mother's house. If Moody was mistaken about when Porter left the house, Doyle's testimony was needed to explain to the jury where Porter went afterwards. Although Doyle's testifying also caused his prior inconsistent statement to come to light, defense counsel plausibly suggested on re-direct that Doyle lied to avoid involvement with the police. Based on our review of the trial transcript, therefore, any deficiency in counsel's performance regarding Doyle's testimony does not appear to us to have prejudiced Porter's defense under *Strickland's* second prong.

In sum, Porter has not suggested to us anything his counsel could have done differently that would have made an acquittal reasonably likely. The eyewitness testimony against Porter included two acquaintances of Porter's and a police officer. All three faced reasonable cross-examination, but the jury apparently believed their testimony. In the face of such direct evidence, Porter's allegations of legal incompetence are insufficient. Thus, even under de novo review, Porter's claim fails and an evidentiary hearing is unnecessary. Porter's second petition for rehearing is DENIED.