**Rodney Earl HILL, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 00–C–367.

United States District Court, E.D. Wisconsin.

Oct. 27, 2000.

Robert O'Reilly, Southside Law Office, Milwaukee, WI, for Petitioner.

Tracy M. Johnson, Carol L. Kraft, Assistant U.S. Attorneys, Milwaukee, WI, for Respondent.

## DECISION AND ORDER GRANTING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE

CLEVERT, District Judge.

Petitioner, Rodney Hill, was sentenced on September 17, 1999, and received a mandatory minimum term of 180 months. Hill claims that his counsel was ineffective by failing to challenge his sentencing enhancement on the ground that two convictions were counted improperly in determining his Armed Career Criminal status under 18 U.S.C. § 924(e). Consequently, Hill is asking the court to vacate his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the motion will be granted.

## BACKGROUND

Hill entered a guilty plea to a single charge of being a felon in possession of a firearm contrary to 18 U.S.C. § 922(g)(1). His presentence report (PSR) detailed an extensive criminal history including three convictions for violent felonies as defined by 18 U.S.C. § 924(e)(2)(B). Each conviction was counted in determining that Hill was an Armed Career Criminal resulting in imposition of a 15–year mandatory minimum sentence. The PSR indicated that Hill had been released from his 1979 attempted armed robbery conviction on November 15, 1982, and from his 1984 burglary conviction on May 10, 1988, following completion of his sentences.

Hill claims that the civil rights he lost as a result of the 1979 and 1984 convictions were restored without reservation by operation of Wis. Stat. § 57.078 (1981–1982), and that his discharge certificates did not contain any language regarding firearms.[1] He cites *Dahler v. United States* 143 F.3d 1084, 1088 (7th Cir.1998) which observes that 18 U.S.C. § 921(a)(20), provides that convictions for which a person's civil rights have been restored may not be counted in determining eligibility for Armed Career Criminal sentencing enhancement unless the law for the convicting jurisdiction expressly provides that the convicted person may not ship, transport, possess, or receive firearms.[2]

Because Hill's direct appeal was dismissed, the government contends he is collaterally attacking his sentence improp-erly and lacks the evidence supporting the claim of ineffective assistance of counsel.

## ANALYSIS

A claim of ineffective assistance of trial counsel may be raised in a § 2255 motion relying on matters outside the trial record. *See Hugi v. United States,* 164 F.3d 378, 381 (7th Cir.1999) ("Section 2255 is the proper way to raise ineffective-assistance contentions when they require augmentation of the record ...."). In dismissing Hill's direct appeal, the Seventh Circuit foreshadowed the instant motion when it observed that the issue of ineffective assistance identified in appellate counsel's *Anders* brief would fail on direct appeal, but noted "[w]here, as here, an ineffective assistance of counsel claim must rely on evidence outside the record, the defendant is better off raising the argument, not on direct appeal, but in a 28 U.S.C. § 2255 motion through which he can create a new record." *United States v. Hill,* 210 F.3d 376 (7th Cir.2000) (Table, text available at 2000 WL 222559). Taking the hint, Hill has created a record to which this court now turns.

To establish ineffective assistance of trial counsel, Hill must show that counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a result. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to counsel's perfor-

1. Wis. Stat. § 57.078 (1981–82), in effect at the time of Hill's release from his 1979 conviction, provides in pertinent part:

   Every person who is convicted of a crime obtains a restoration of his civil rights by serving out his term of imprisonment or otherwise satisfying his sentence. The certificate of the department or other responsible supervising agency that a convicted person has served his sentence or otherwise satisfied the judgment against him is evidence of that fact and that he is restored to his civil rights.

2. 18 U.S.C. § 921(a)(20) sets forth limitations on the violent felony convictions that may be counted for purposes of determining Armed Career Criminal status under § 924(e). In relevant part, that section states:

   What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

mance, the inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. Counsel's performance is entitled to "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052. If deficient performance is shown, then prejudice must be demonstrated. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. In *Durrive v. United States*, 4 F.3d 548 (7th Cir.1993), the Seventh Circuit adopted the principle that an increased prison sentence resulting from an unchallenged sentencing error does not satisfy the *Strickland* prejudice prong unless the increase is "significant." [3]

Although the government's briefs hint that failure of Hill's counsel to challenge the § 924 enhancement was not deficient performance, it does not develop the argument. Instead, the government focuses on Hill's inability to establish prejudice. Regardless, the court is satisfied that Hill has established that his trial counsel's performance fell below an objective standard of reasonableness.

■ A finding that Hill was an armed career criminal would affect his sentence significantly—the 7th Circuit observed that he faced a statutory maximum sentence of 10 years, and a sentencing guideline range of 51 to 63 months or a mandatory 15 year minimum sentence. Hence, an attorney providing reasonable representation should have reviewed his conviction record to determine whether he qualified for the Armed Career Crimi-

nal enhancement, and, if not, challenge its application. Furthermore, that attorney should have researched relevant case law. Had this been done, attention would have been drawn to published Seventh Circuit decisions indicating that Wisconsin issues discharge certificates upon satisfaction of sentences. *See Roehl v. United States*, 977 F.2d 375, 378 (7th Cir.1992) ("As provided in Wis. Stat. § 57.078, the authorities issue a certificate to a person who has satisfied his sentence."), *cert. denied*, 510 U.S. 825, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993); see also *Dahler*, 143 F.3d at 1086 (7th Cir.1998) (noting that Wisconsin issued a discharge certificate to defendant when he was released from his conviction), *cert. denied*, 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999). The cases also reveal that in some instances, the discharge certificates do not contain notice that the recipient may not ship, transport, possess, or receive firearms, and that the conviction may not be counted as a predicate conviction under 18 U.S.C. § 924(e). *Dahler*, 143 F.3d at 1088 ("A state that wants its convictions to supply the basis of armed-career-criminal enhancements must be more careful than Wisconsin and Minnesota have been.... Because Dahler's 1976 certificate does not 'expressly [provide] notice that [he] may not ship, transport, possess, or receive firearms', his 1970 conviction is not a 'previous [conviction] ... for a violent felony' for purposes of § 924(e)(1)"). Under the circumstances in this case, counsel's failure to investigate and question the restoration of Hill's civil rights fell below an objective standard of reasonableness.

Significantly, counsel's failure to challenge use of these convictions was *not* a

---

**3.** The Seventh Circuit has never explained what constitutes a "significant" increase in a sentence. In *Durrive,* an increase of 12 months was found to be not significant and in *Martin v. United States,* 109 F.3d 1177 (7th Cir.1996), the court found that an increase of two offense levels resulting in a 16 month increase was not significant. *Durrive* also

suggested that an increase of 22 months was not significant and, more generally, that any increase in sentence resulting from an error of "two or three steps" in calculation of the offense level is not significant. *See* 4 F.3d at 551, *cert. denied,* 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997).

strategic decision. To the contrary, counsel explains that he was operating on a mistaken belief that "restoration of rights" was a "dead issue," and had "no strategic reason" for failing to challenge the government's use of the discharged convictions. Affidavit of Attorney Dvorak ¶ 4. Counsel's acknowledgment rebuts any presumption of reasonableness to which his performance might otherwise be entitled, and reinforces this court's determination that Hill has satisfied *Strickland*'s deficient performance prong.

Moreover, the court finds that Hill has met his burden of demonstrating prejudice. Hill need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Porter v. Gramley*, 122 F.3d 351, 353 (7th Cir.1997) ("Strickland's 'reasonable probability' language does not require a petitioner to meet a preponderance of the evidence threshold, but it does require a petitioner to show 'a probability sufficient to undermine confidence in the outcome.' "), *certiorari denied*, 522 U.S. 1093, 118 S.Ct. 886, 139 L.Ed.2d 873 (1998).

In this vein, the court rejects the government's suggestion that Hill must produce copies of his discharge certificates to prove prejudice. *See, e.g.*, Government's Memorandum in Opposition to Petition at 9 ("The petitioner must produce the certificates to establish cause and prejudice."). Certainly, Hill could attempt to satisfy his burden by offering direct evidence such as actual copies of his discharge certificate. However, he is not limited to such direct evidence and like any other litigant he may attempt to prove his case through circumstantial evidence, which is the approach he has taken.[4]

As indicated above, Hill's burden is to establish a reasonable probability that, but for counsel's deficient performance, the proceeding would have differed significantly. *Strickland, supra; Durrive, supra.* Hence, Hill must establish a reasonable probability—not a certainty, as the government suggests—that he received discharge certificates restoring his civil rights without reservation. Moreover, he must also establish a reasonable probability that had his counsel proven receipt of the discharge certificate at sentencing by a preponderance of the evidence, this court would not have applied the Armed Career Criminal enhancement.[5] Finally, Hill

4. In a related vein, the government's assertion that "Under *Dahler*, state law is controlling if a petitioner was not given a certificate," Mem. in Opp. to Mot. at 9, is an accurate statement of the law but is misplaced because Hill's claim is that he *was* issued a discharge certificate. That is, he does not base his motion on the statutory restoration of civil rights upon completion of his sentence pursuant to Wis. Stat. § 57.078, but rather on the Wisconsin Department of Corrections issuance of a discharge certificate restoring his civil rights without any reservation regarding firearms. Thus, although the government is correct that if Hill was relying solely on his statutory restoration of civil rights his claim would fail because Wisconsin prohibits felons from possessing firearms, *see, e.g., United States v. Erwin*, 902 F.2d 510, 513 (7th Cir.) (concluding that where the state sends no document restoring civil rights, court must look to state law to determine whether civil right

to possess guns has been restored, and statutory provision prohibiting possession of firearms by felon constitutes express notice that firearm rights have not been restored), *cert. denied*, 498 U.S. 859, 111 S.Ct. 161, 112 L.Ed.2d 127 (1990), this argument is immaterial to Hill's claim.

5. Hill maintains that the government bore the burden at sentencing of proving the applicability of the Armed Career Criminal enhancement. In particular, he contends that the government bore the burden of proving that Hill's convictions could be properly counted. However, the Seventh Circuit has adopted the view that the government's burden is to establish that the defendant has three prior violent felony convictions. Upon such a showing, the burden shifts to the defendant to prove by a preponderance of the evidence that a conviction cannot be used for sentence enhancement. *United States v. Hudspeth*, 42 F.3d

must show to a reasonable probability that his sentence was significantly harsher than it would have been if the enhancement were not applied. Guided by these standards, the court now considers Hill's evidence.

■ Hill relies on the affidavit of Walter Dickey, Secretary of the Wisconsin Department of Corrections between 1983 and 1987 and a participant in the drafting of DOC's administrative rules. Dickey expresses personal knowledge "of the practices, procedures, law and regulations pertaining to the discharge of inmates from the Wisconsin Department of Corrections." Dickey Aff. ¶ 3. He adds: "Based on the law in effect at that time, and the policies of Wisconsin Department of Corrections, ... I am of the opinion that Mr. Hill was issued a discharge certificate in 1982, as all inmates who finished parole were issued discharge certificates as required by law." *Id.* ¶ 5. Dickey further states "[s]uch discharge contained language to the effect that 'Any civil rights lost as result of such judgments of conviction are restored by virtue of this discharge, under the provisions of Section 57.078 of the Statutes of the State of Wisconsin,'" *id.* ¶ 6, and that "such discharge would not contain any express reservation regarding the right to own or possess a firearm." *Id.* ¶ 7.

In conjunction with Dickey's affidavit, Hill has submitted sample discharge certificates consistent with this opinion. For example, two certificates issued in July 1982 for individuals (Donovan and Zellmer) who satisfied their sentences in June 1982, reflect the restoration of rights language quoted in Dickey's affidavit and contain no firearms reservation. In response, the government points to another discharge certificate in Hill's submission which deals with another person (Finney) who completed a sentence for armed robbery and prison escape in December 1983

(approximately one year after Hill completed his sentence) and was issued a discharge certificate 2½ years later in May 1986. That certificate contains no language regarding restoration of civil rights; rather, it only states that Finney completed his sentence and was discharged. Noting that there is no apparent reason for the change in language on the certificates,[6] and that "[t]here is absolutely no evidence that Hill definitely received a discharge certificate like Zellmer's and Donovan's versus a certificate equivalent to Finney's," Gov't. Mem. in Response to Pet.'s Evid. Submission at 4, the government argues that Hill has failed to meet his burden.

At sentencing Hill's burden would have been to prove receipt of a discharge certificate a preponderance of the evidence, not a certainty. At present his burden is to establish a reasonable probability that the outcome at sentencing would have been different. In reply, Hill submitted two additional certificates that are significant in that the recipients, Villareal and Kaufman, were discharged within days of Hill— Kaufman the day before (November 14, 1982) and Villareal two days later (November 1982). These discharge certificates, issued February 1983, contain the following language: "Any civil rights lost as a result of said judgment or order are restored by virtue of this discharge" and do not include any reservation regarding firearms. Additionally, Hill has submitted a page from the Department of Corrections' Termination Assignment Log showing that Kaufman and Hill were assigned DOC termination numbers on the same day, March 17, 1983, approximately one month after Kaufman's discharge certificate was issued. Furthermore, Kaufman, like Hill, was convicted, among other things, of armed robbery. These facts—for example, identical crimes, proximity of their

---

1015, 1019 n. 6 (7th Cir.1994), *cert. denied,* 515 U.S. 1179, 116 S.Ct. 20, 132 L.Ed.2d 903 (1995).

**6.** In stating that "[t]here is no explanation for the apparent differences in certificates issued

merely months apart," Gov't. Mem. in Response to Pet.'s Evid. Submission at 4, the government fails to recognize that Finney's certificate was actually issued almost four years after Zellmer's and Donovan's.

discharges, and the assignment of a termination number on the same day—strongly support the inference that Hill and Kaufman were "processed" in the same manner and received similar discharge certificates.[7] Thus, it is more likely than not that Hill received a discharge certificate similar to those issued in 1982–83 to Zellmer, Donovan, Kaufman and Villareal, containing language restoring his civil rights with no language restricting possession of firearms as evident in the 1986 certificate issued to Finney.

Thus, Dickey's uncontroverted affidavit establishes that it was the practice of the Wisconsin Department of Corrections to issue discharge certificates without stating any reservation concerning firearms. Although the language in Hill's sample discharge certificates varied somewhat prior to 1986, all of the certificates expressly restore "any civil rights lost as a result" of the judgments of conviction and did not contain any reservation concerning firearms. Consequently, this record does not support the conclusion that Hill was not issued a discharge certificate consistent with DOC practice. Conversely, it is reasonable to infer and more likely than not that Hill was issued such a certificate after satisfying his sentence. Thus, Hill would have established that his 1976 conviction could not be counted for purposes of applying § 924(e) and he would not have been subject to the sentence enhancement[8] imposed in his case and his sentence would ·have been *significantly* less

harsh. *See Durrive v. United States*, 4 F.3d 548 (7th Cir.1993) (holding that prejudice requires that the difference in sentencing be significant). Without the § 924(e) enhancement, Hill's adjusted total offense level was 17 not 30. Because Hill was determined to be in criminal history category VI, his sentencing range would have been 51 to 63 months imprisonment rather than 168–210 and the statutory maximum sentence would have been 10 years rather than 15 years.

Now, therefore,

IT IS ORDERED that Hill's Motion to Vacate sentence is granted.

7. The Termination Number Assignment Log submitted by Hill does not include an entry for Villareal. ·However, the DOC Notice of Case Status Change form submitted by Hill reflects that Villareal was assigned T–Number 259,524, which is approximately 180 entries after that of Hill and Kaufman. The Assignment Log lists T-numbers in sequential order with the date of assignment noted. For each day, the entries are in alphabetical number. The log reflects that Hill's T-number (259, 341) was assigned on March 17, 1983 as was Kaufman's (259,346). The page submitted by Hill which contains the March 17, 1983 assignments for names beginning with A through K includes T-numbers ranging from 359,303 through 359,348. In light of the rel-

ative proximity of Villareal's T–Number (359,-524) to that of Hill and Kaufman, the fact that his name is toward the end of the alphabet, and that his discharge certificate is dated one day after Kaufman's, the court infers that DOC processed his discharge within a small number of days after Hill and Kaufman.

8. The government does not challenge Hill's assertion that if either the 1979 conviction or the 1984 conviction could not be counted, the Armed Career Criminal enhancement would not apply. Consequently, because the court concludes that Hill has satisfied his burden with respect to the 1979 conviction, the court need not address the 1984 conviction.