# In the
# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 03-4184

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

THOMAS P. VITRANO,

*Defendant-Appellee.*

—————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 CR 199—**Rudolph T. Randa**, *Chief Judge.*

—————————

ARGUED SEPTEMBER 8, 2004—DECIDED APRIL 19, 2005

—————————

Before POSNER, RIPPLE and WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Thomas Vitrano pleaded guilty to one count of possessing a firearm as a felon and to one count of possessing a firearm while subject to a domestic abuse injunction in violation of 18 U.S.C. § 922(g). The Government appeals the district court's determination that Mr. Vitrano was not subject to an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). For the reasons set forth in the following opinion, we reverse the judgment of the district court.

# I
# BACKGROUND

On August 28, 2002, Mr. Vitrano's former girlfriend contacted the Wisconsin State Police when she discovered a wrapped birthday present and a birthday card on her porch. The responding officers later found the "present" to contain two functioning pipe bombs. As part of their investigation, officers executed a search warrant of Mr. Vitrano's residence and found, among other things, a Winchester X 12-gauge shotgun slug. A grand jury returned a single count indictment under 18 U.S.C. § 922(g)(1) for the unlawful possession of a firearm by a felon. Law enforcement officers later discovered that Mr. Vitrano had used a Remington 870 shotgun while duck hunting and that he was the subject of a domestic abuse injunction in effect from January 29, 2001, through January 29, 2003. The grand jury therefore returned a superseding indictment with three additional counts. Count Two related to Mr. Vitrano's possession of the shotgun slug while subject to the domestic abuse injunction. Counts Three and Four related, respectively, to his being a felon in possession of the Remington shotgun in violation of § 922(g)(1), and to his possession of the shotgun while the subject of the domestic abuse injunction in violation of § 922(g)(8)(B). Mr. Vitrano pleaded guilty to Counts Three and Four.

The Pre-Sentence Investigation Report ("PSR") noted that Mr. Vitrano had three previous convictions. Two of those convictions were for endangering safety regardless of life and the other was for escape. Despite these convictions, the PSR did not recommend that Mr. Vitrano be considered an armed career criminal, *see* 18 U.S.C. § 924 (e)(1), and therefore did not recommend enhancement of his sentence under U.S.S.G. § 4B1.4(b)(3)(B).

Upon examination of the PSR, the Government filed an objection. Mr. Vitrano had been discharged from his 1977 conviction after completing his sentence in 1983; in the Government's view, this conviction ought to have counted for purposes of § 924(e)(1).[1] Mr. Vitrano did not produce a copy of his discharge from the 1977 conviction because it could not be located. The parties therefore obtained sample discharge orders from 1983 that had been stored at the Wisconsin Historical Society. Mr. Vitrano submitted several sample orders, which all stated "[defendant] be, and hereby is, discharged absolutely." R.49. The Government submitted five types of orders, which provided: (1) "[a]ny civil rights lost as a result of such judgments of conviction are restored by virtue of this discharge"; (2) the defendant "be and, hereby is, discharged absolutely"; (3) "the aforesaid be, and hereby is, discharged"; (4) the defendant "be, and hereby is, discharged from said judgment or order only"; and (5) the defendant "is discharged and released from any further custody and control of or by the State of Wisconsin." R.48 at 7.

Before the district court, Mr. Vitrano contended that, no matter which of the sample discharges he had received, the 1977 conviction could not count under § 924(e)(1) because none of the forms contained language that expressly would have notified him that he could not ship, transport, receive or possess a firearm. In his view, such explicit notification was required by 18 U.S.C. § 921(a)(20).[2] The Government

---

[1] The PSR indicates that Mr. Vitrano had been discharged from the 1988 and 1995 convictions as well; he has not challenged the use of those convictions for purposes of § 924(e)(1).

[2] 18 U.S.C. § 921(a)(20) provides:

The term "crime punishable by imprisonment for a term exceeding one year" does not include—

(continued...)

took a different view. It submitted that only the first sample discharge order would have restored Mr. Vitrano's civil rights and, therefore, needed an express firearms reservation; it further contended that Mr. Vitrano could not establish by a preponderance of evidence that he had received that type of order rather than the remaining four types.

In addressing the arguments of the parties, the district court noted, as a threshold matter, that there was no dispute that Mr. Vitrano had been discharged and that his discharge order would have matched one of the five sample orders procured by the parties from the Historical Society. The district court then expressed the view that the disclosure requirement of § 921(a)(20) addresses the possibility that a prisoner will receive one of four categories of discharges: a type of discharge that informs the defendant his civil rights are restored, an expungement, a set aside, or a pardon.

---

[2]  (...continued)

> (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

> (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

The district court's discourse with counsel revealed that the court believed that § 921(a)(20)'s notice requirement applied to each and every category of discharge that, according to the files of the Historical Society, Wisconsin might have issued—not just the first category, which recited that civil rights were restored. Thus, regardless of which of the five sample discharges Mr. Vitrano had received, § 921(a)(20) required the exclusion of his conviction for purposes of § 924(e)(1) because none would have contained a firearms reservation.[3] In response to the Government's questions, the district court clarified that a discharge could be characterized as a set aside.[4]

## II

## DISCUSSION

We review a district court's statutory interpretation de novo. *See United States v. Davis*, 16 F.3d 212, 214 (7th Cir. 1994). In approaching a question of statutory interpretation, we begin with the plain wording of the relevant statutory provisions.

The basics of the statutory scheme are readily ascertainable from a reading of the statutory language. A person who violates § 922(g) and who has at least three prior convictions for a violent felony, committed on separate occasions, is subject to an enhanced sentence under 18 U.S.C. § 924(e)(1).

---

[3] The district court referred to § 921(a)(20) as a heightened notice statute, and it found Mr. Vitrano's presumable knowledge that he could not possess a firearm irrelevant.

[4] The district court declined the Government's offer to brief whether a discharge order constituted an expungement or a set aside under Wisconsin law because the court thought federal law necessary to interpret § 921(a)(20).

A "violent felony" is a crime that, among other things, is "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 924(e)(2)(B). Section 921(a)(20) excludes certain convictions for purposes of § 924(e)(1):

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). The Government has the burden to establish three prior felonies; upon that showing, the defendant must prove by a preponderance of the evidence that a conviction cannot be used under § 924(e)(1). *See Hill v. United States*, 118 F. Supp. 2d 910, 914 n.4 (E.D. Wis. 2000). The first sentence of § 921(a)(20) directs us to look at state law to determine whether a defendant is deemed convicted. *United States v. Erwin*, 902 F.2d 510, 512 (7th Cir. 1990).

We have addressed previously the operation of § 921(a)(20)'s notice requirement. In *Erwin*, we explained:

> The second sentence of § 921(a)(20) is an anti-mouse-trapping rule. If the state sends the felon a piece of paper implying that he is no longer "convicted" and that *all* civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher. The final sentence of § 921(a)(20) cannot logically mean that the state may dole out an apparently-unconditional restoration of

rights yet be silent so long as any musty statute withholds the right to carry guns. Then the state would never have to say a peep about guns; the statute would self-destruct. It must mean, therefore, that the state sometimes must tell the felon that under state law he is not entitled to carry guns . . . . When, however, the state sends no document granting pardon or restoring rights, there is no potential for deception, and the question becomes whether the particular civil right to carry guns has been restored by law.

*Id.* at 512-13.

In *Dahler v. United States*, 143 F.3d 1084 (7th Cir. 1998), we held that a discharge order stating that "[a]ny civil rights lost as result of conviction herein described, are restored by virtue of this discharge," needed to state expressly that the person may not ship, transport, possess or receive firearms even after receiving the discharge order. *Dahler*, 143 F.3d at 1086, 1088. In a later opinion, *United States v. Gillaum*, 372 F.3d 848 (7th Cir. 2004), we also focused on, among other things, the notice requirement.

Read as a whole, we believe that these cases are best understood as establishing the principle that a state may not employ language in discharging a prisoner that will lull the individual into the misapprehension that civil rights have been restored to the degree that will permit him to possess firearms. If a state does use language that creates such a false sense of security, that conviction may not be used to justify an enhanced sentence under 18 U.S.C. § 924(e).

In the case before us, as the Government concedes, a discharge certificate stating that "[a]ny civil rights lost as a result of such judgments of conviction are restored by virtue of this discharge," would permit Mr. Vitrano to prevail because, as we said in *Dahler*, such language indicates a full restoration of all civil rights unless accompanied by an

express prohibition on the use of firearms. *See Dahler*, 143 F.3d at 1086-88. In contrast, none of the other four types of certificates that Mr. Vitrano might have received purported to restore civil rights. A person receiving any one of these discharges would not be misled into believing that the certificate also gave him a right to carry firearms. We note specifically that we do not believe that a discharge certificate that states "[defendant] be, and hereby is, discharged absolutely" can be read reasonably as absolving an individual of a criminal conviction or of the collateral consequences of that conviction.

Because Mr. Vitrano cannot show by a preponderance of the evidence that he received a discharge certificate whose language might be read reasonably to restore all of his civil rights, such that he would be misled if not informed that firearms were prohibited, § 921(a)(20) is not implicated.

## Conclusion

Accordingly, for the foregoing reasons, we reverse the judgment of the district court and remand the case for re-sentencing in accordance with this opinion.

REVERSED and REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*