In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-1512

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS P. VITRANO,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-CR-199—**Rudolph T. Randa**, *Chief Judge.*

_____

ARGUED DECEMBER 6, 2006—DECIDED JULY 19, 2007

_____

Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* On August 8, 2003, Thomas Vitrano pleaded guilty to one count of possessing a firearm as a felon and one count of possessing a firearm while subject to a domestic abuse injunction, both in violation of 18 U.S.C. § 922(g). The firearm at issue was a Remington 870 shotgun that Vitrano had taken with him to go duck hunting. He was initially sentenced to 120 months' imprisonment—the term that the district judge believed was the statutory maximum—but the United States appealed the sentence claiming that Vitrano should have been classified a career offender under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). See *United States v. Vitrano*, 405 F.3d 506, 507 (7th Cir. 2005)

("*Vitrano I*"). We agreed with the government and re-
manded for re-sentencing. In light of Vitrano's status as an
armed career criminal, his new guideline range on remand
was 235-293 months; the new statutory maximum to which
he was exposed was life in prison. The government pro-
duced evidence for the first time at his second sentencing
hearing showing that Vitrano was exceptionally violent
toward people, not just ducks. The judge, considering the
new evidence, re-sentenced Vitrano to 360 months' im-
prisonment, 67 months above the advisory guideline range.
On appeal, Vitrano raises multiple challenges to his re-
sentencing proceedings. Finding no error, we affirm.

**I**

   The procedural background of the case is spelled out in
*Vitrano I*, for those who are interested; we see no need to
repeat it here. Each of Vitrano's current claims on appeal
relates to the government's introduction at his second
sentencing of damaging prior uncharged conduct that was
not before the district court the first time around. The
particular evidence to which Vitrano takes exception
reveals that he sent multiple functioning pipe bombs
disguised as a birthday present to his former girlfriend's
house. The pipe-bomb incident technically bore no rela-
tion to the shotgun possession for which Vitrano pleaded
guilty (except that the government discovered the shotgun
during the course of its investigation of the pipe-bomb
incident), but the evidence at the second sentencing
hearing demonstrated that Vitrano was responsible for
them. Two police officers who investigated the offense
testified that the bombs were functioning and that some
of the parts contained in them were traceable to Vitrano.
The prosecution also presented statements by jailhouse
informants claiming that Vitrano had discussed with them
various details about the bombing, including certain facts

that the government posited Vitrano could have known about only if he had actually carried out the plot.

The government did not limit its new evidence to the pipe-bomb incident. It also detailed numerous other episodes from Vitrano's exceedingly violent past. It summarized out-of-court statements by Vitrano's mother, daughter, an ex-wife and multiple former girlfriends—including Patricia Gerard, the recipient of the "birthday present" pipe bombs—recounting harrowing acts of violence. Vitrano's first wife, for example, stated that he would "continuously beat her," that he broke her nose, jaw, and ribs, and that at least once he threw what appeared to be a lit pipe bomb at her. The other statements were similarly disturbing; at least three women, including Gerard, had obtained restraining orders against Vitrano. The police officers who testified at sentencing—all experienced—agreed that Vitrano was "one of the most violent individuals [they had] encountered in [their] career[s]."

In imposing a sentence, the district judge explicitly considered the factors outlined in 18 U.S.C. § 3553(a). The court looked first at Vitrano's extensive criminal history, his prior drug use and mental instability, as well as his demonstrated disrespect for authority. It concluded that the government had demonstrated that Vitrano was the person responsible for the pipe bombs left at Gerard's home, and then it considered the other evidence of Vitrano's violent past. See 18 U.S.C. § 3553(a)(1). It was that factor, more than any others, that drove the court's decision to choose a sentence above the guideline range. Vitrano challenges his new sentence on five grounds: he argues first that the preponderance of the evidence standard used at sentencing violates due process; second that the district court erred by considering evidence that was not "relevant" to the charged offense; third that the

court erroneously failed to make an explicit ruling on his pre-sentence motion; fourth that the government's use of new damaging evidence at the second sentencing was the product of vindictiveness; and finally, that the government breached a promise not to use that evidence against him at sentencing. We consider each argument in turn.

## II

Vitrano's claim that facts found at sentencing must be proven beyond a reasonable doubt is entirely without merit, as we have consistently held, and as the Supreme Court has recently underscored. See *Rita v. United States*, 127 S.Ct. 2456, 2466 (2007); see also *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005); *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). In light of *Rita*, we consider this argument foreclosed.

His second claim—that conduct considered by a district court in imposing a sentence above the guideline range must be "based on factors relevant to the offense of conviction"—warrants only slightly more attention. He maintains that only those incidents that are somehow related to his use of a shotgun for duck hunting can be considered by the district judge at sentencing. Since, in his view, the uncharged allegations of violence toward his ex-wife and girlfriends are "completely unrelated" to his possession of a shotgun for hunting, it was improper for the district judge to enhance his sentence based on them.

Vitrano is confusing those guideline provisions that require the district judge to make certain factual findings in calculating the applicable guideline range with the factors that may be considered under § 3553(a) in choosing the ultimate sentence. Although provisions in the guidelines such as U.S.S.G. 1B1.3(a)(2)—the "Relevant Conduct"

provision—allow a district judge to enhance a defendant's advisory guideline range only for conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction," once the applicable range is determined, the judge's ability to choose which sentence to impose is not so constrained. See *United States v. Orozco-Vasquez*, 469 F.3d 1101, 1107 (7th Cir. 2006) ("Sentencing post-[*United States v.*] *Booker*[, 543 U.S. 220 (2005)] requires the sentencing judge to properly calculate the advisory guidelines range in the same manner as before *Booker* and then to make a discretionary decision whether to sentence the defendant within the advisory range or outside it in light of the very broadly stated sentencing factors set forth in § 3553(a)."). 18 U.S.C. § 3661, entitled "Use of information for sentencing," states, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." As we stated in *United States v. Nowicki*, with respect to the sentencing process, "The trial judge may 'appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it might come.'" 870 F.2d 405, 406-07 (7th Cir. 1989) (quoting *United States v. Nesbitt*, 852 F.2d 1502, 1521 (7th Cir. 1988)). This has long been understood to include "reliable evidence of wrongdoing for which the defendant has not been charged or convicted." *Nowicki*, 870 F.2d at 407.

Vitrano cites *United States v. Castro-Juarez* for the proposition that we should "look at pre-*Booker* law by analogy and ask how the sentence would have fared under decisions that analyzed the reasonableness of upward departures." 425 F.3d 430, 434 (7th Cir. 2005). But in *Castro-Juarez,* we wrote that since *Booker*,

> [W]e have looked to [the "upward departures" provision of the guidelines] and [pre- *Booker* cases] only by way of analogy, and while [the defendant's] sentence might not have been sustainable as an "upward departure" before *Booker*, it does not follow that [his sentence] is necessarily unreasonable. Before *Booker*, we recognized that district courts were required to sentence within the guideline range except in unusual cases, and anything but a loose comparison to pre-*Booker* departure cases would vitiate the post-*Booker* discretion that sentencing courts enjoy. All that is necessary now to sustain a sentence above the guideline range is an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant.

*Id.* at 436 (internal citation and quotation omitted). See also *United States v. Valle*, 458 F.3d 652, 657 (7th Cir. 2006) ("[O]ur pre-*Booker* standards for evaluating departures are no longer binding. . . ."); *United States v. Arnaout*, 431 F.3d 994, 1003 (7th Cir. 2005) (noting "that the concept of 'departures' has been rendered obsolete in the post-*Booker* world").

Vitrano has not specifically challenged the reasonableness of his sentence, and so we have no occasion to consider that question. (Given the judge's explanation and Vitrano's record, however, nothing jumps out as unreasonable.) All that is before us is the question whether it was permissible for the district judge to consider the evidence included in the government's 2006 sentencing memorandum in arriving at the ultimate sentence. We conclude that it was.

We turn next to Vitrano's claim that the district court failed to rule on his pre-sentencing motion. That motion raised essentially the same claims that Vitrano is presenting here: (1) that the court should not base an enhance-

ment on "irrelevant" conduct; (2) that the request for an "upward departure" is the product of vindictiveness; (3) that an "upward departure" is a breach of a promise made by the prosecutor; and (4) that the government did not give defense counsel specific notice of the rationale it intended to use in arguing for an "upward departure." He argues that the failure to rule explicitly on his motion violates FED. R. CRIM. P. 32(i)(3)(B), which states, "At sentencing the Court must—for any disputed portion of the pre-sentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the Court will not consider the matter in sentencing."

The purpose of Rule 32 is "to ensure that sentencing is based on reliable facts found by the court itself after deliberation. . . ." *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003). The rule applies specifically to factual disputes. *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005) ("The rule may be limited to factual disputes. The cases so assume, without so stating outright."). None of Vitrano's arguments raises a dispute about any of the facts on which the district judge relied in enhancing his sentence; he simply asserts various reasons why those facts should not have been considered at all. Rule 32 imposes no affirmative duty on the district court to address these general points. In any event, the district judge, who noted at sentencing that he had read all the briefs and submissions, clearly and accurately stated its basis for imposing a sentence above the guidelines range. As the district court explained:

> Post-*Booker*, the Court can look at the factors under 3553 . . . . In doing so, the Court . . . looks at the history and characteristics of the Defendant. It also looks at the nature of the offense in making those calculations. And in the past any deviation based on

those factors from the sentencing guidelines required that they be outside the heartland of cases. Now, the Court can consider those factors and, as long as the sentence is reasonable, not have to make a finding that any of the factors or any of the facts that it utilizes are outside the heartland of cases as described by the sentencing guidelines.

As for Vitrano's other arguments, the district court did not err by leaving them unaddressed. See *Cunningham*, 429 F.3d at 678 ("A sentencing judge has no more duty than we appellate judges do to discuss every argument made by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence. . . ."). Vitrano has not shown that the district court committed error at sentencing.

### III

We now consider Vitrano's complaints about the prosecutor's behavior at sentencing. The government's decision to introduce the evidence about the pipe bombs and the other uncharged violent conduct must have been vindictive, in Vitrano's view, because it did not present this information at his first sentencing. He relies on the Supreme Court's decision in *North Carolina v. Pearce*, which held, "Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. 711, 725 (1968). The ruling in *Pearce*, however, does not help Vitrano. *Pearce* was intended in part to protect a defendant's right to appeal or to attack his first conviction collaterally without fear of reprisal. Here, though, it was the government that appealed the initial sentence, and it did so (as it was entitled to do under 18 U.S.C. § 3742(b)) for the very purpose of exposing Vitrano to more jail time.

The government made it abundantly clear throughout the litigation that it intended to seek as lengthy a sentence as was legally possible. The plea agreement stated that "[t]he government will recommend to the sentencing court that the defendant is an Armed Career Criminal," and the government specifically reserved the right "to recommend an upward departure and/or consecutive sentences based on aggravating circumstances."

It followed through on its promise and argued at the first sentencing that Vitrano was a career offender. The government additionally stated at that point that it believed "very strongly" that Vitrano deserved a sentence at the high end of the guideline range. Unsuccessful in persuading the district court that Vitrano qualified for the ACCA enhancement, the government appealed the issue. After it won, it announced at re-sentencing that "[w]e did not take the appeal to establish that the Defendant was an armed career criminal merely as an academic exercise." Nothing in this record suggests that the government's actions on re-sentencing had anything to do with Vitrano's legal strategy on appeal. There was no vindictiveness here.

There is also no evidence in the record that the use of the uncharged conduct at the re-sentencing breached any promise made by the prosecutor, as Vitrano alleges. In fact, there is substantial evidence that no such promise was ever made. Vitrano does not dispute the fact that the plea agreement contains an integration clause, which states that "no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty." Moreover, as noted, the agreement specifically preserves the government's right to advise the district court and the probation office of any and all information which might be pertinent to sentencing, as well as the right to seek an upward departure

based on aggravating circumstances. When asked at his change of plea hearing whether there were any "threats or promises . . . aside from what's contained in this Plea Agreement," Vitrano replied, "No, Your Honor." His attorney's stated recollection to the contrary does not outweigh the documented evidence in the record.

## IV

We hold that neither the district court nor the government committed error during Vitrano's re-sentencing proceedings. The sentence is therefore AFFIRMED.

A true Copy:

      Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*