NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 22, 2008
Decided May 22, 2008

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

Nos. 06-3992 & 07-1581

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeals from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| v. | |
| JOEL VALENCIA & ADALBERTO BETANCOURT, | Nos. 04-CR-200-04 & 04-CR-200-01 |
| *Defendants-Appellants*. | Harry D. Leinenweber, |
| | *Judge.* |

## O R D E R

Both Joel Valencia and Adalberto Betancourt pleaded guilty to conspiring to possess cocaine with the intent to deliver. The district court sentenced Valencia and Betancourt to 210 and 144 months imprisonment, respectively. In this consolidated appeal, both defendants challenge the district court's decision to deny their requests for minor-participant "role-in-the-offense" reductions under U.S.S.G. § 3B1.2. Valencia also contends that the court clearly erred in rejecting his request to reduce his sentence below his guidelines range based on the conditions of confinement he endured at a state

facility before he was sentenced. Because the district court did not commit clear error in not granting either defendant a role-in-the-offense reduction, or in sentencing Valencia within the guidelines, we affirm.

The facts are not in dispute. Beginning (at the latest) in September 2003, Valencia, Betancourt, and six others participated in a cocaine distribution ring. The leader would arrange for bulk shipments of cocaine to be delivered to a specific house in Chicago, and other members of the ring sold it to customers in Chicago and other nearby cities. Neither Valencia nor Betancourt supervised these operations. Valencia was paid $1,000 weekly to guard the "stash" house, load and secure cocaine for later delivery, and help transport the drugs. On one occasion he helped deliver three kilograms of cocaine to buyers. Betancourt similarly helped guard and transport the cocaine, once delivering several kilograms from Chicago to buyers in Detroit. He also installed a compartment in one of the delivery cars to hide the drugs.

After law enforcement officials caught on to the group's activities, they recovered roughly 330 kilograms of cocaine and several hundred-thousand dollars from the conspirators in February 2004; they also arrested Betancourt and Valencia. Both defendants pleaded guilty to one count of conspiring to distribute cocaine, *see* 21 U.S.C. § 846. The statutory minimum for that count is 10 years imprisonment. *See id.; id.* § 841(b)(1)(A)(iii).

At sentencing Valencia urged the district court to reduce his offense level as either a minimal or a minor participant in the conspiracy. The court responded that Valencia "had several different roles in the offense" and that he "helped transport and unload cocaine on several occasions." The court acknowledged that Valencia was not a supervisor or a manager, but concluded that he also did not serve in a minor or minimal role. Valencia's offense level was calculated at 35, which, coupled with a criminal history category III, resulted in a guidelines imprisonment range of 210-262 months. Valencia asked the court for "leniency" in determining his sentence on the ground that he was not housed at the Metropolitan Correctional Center in Chicago before sentencing, but instead was subjected to "horrific conditions" elsewhere. The district court noted that Valencia received lenient sentences after his two prior drug convictions, and that he became involved in this cocaine operation while still on probation for those offenses. Therefore, the court concluded that a sentence within the guidelines range was appropriate. Valencia was sentenced to 210 months.

Betancourt also asked for a minor-participant reduction during his sentencing hearing. According to Betancourt, he worked "at the direction of others in multiple roles." The district court agreed that Betancourt was "pretty much a complete mule in this case," but because Betancourt materially assisted in the conspiracy, the court declined to adjust his base offense level as a minor participant. Betancourt had no criminal history, so with a total offense level of 35, his guidelines imprisonment range was between 168-210 months. Nevertheless, referring to his role as a "mule," the district court decided to "give [Betancourt] somewhat of a break," and sentenced him to 144 months imprisonment.

On appeal Valencia and Betancourt contend that the district court erred in declining to adjust their base offense levels as minor participants in the conspiracy. The sentencing guidelines shave two levels off a defendant's offense level if the district court determines that he was a minor participant in the offense. *See* U.S.S.G. § 3B1.2. A "minor participant" is one who "plays a part in committing the offense that makes him substantially less culpable than the average participant." *Id.* cmt. n.3(A). The district court's decision to deny a minor-participant adjustment under § 3B1.2 is reviewed for clear error, *see United States v. Emerson*, 501 F.3d 804, 815-16 (7th Cir. 2007), and we rarely reverse the denial of this adjustment, *see United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959-60 (7th Cir. 2004).

Here, Valencia and Betancourt assert that, although they transported drugs, they were less culpable than the other members of the conspiracy, and thus they should have received the reduction. Betancourt in particular seizes on the district court's description of his role as a "mule" and his resulting below-guidelines sentence as proof that his role was minor. But even if Betancourt was "just" a courier, we have noted that "couriers play an *important* role in any drug distribution scheme and therefore are not automatically entitled to a mitigating role reduction." *United States v. Hamzat*, 217 F.3d 494, 498 (7th Cir. 2000) (emphasis added). Because Betancourt was not only a courier but also guarded and hid the cocaine, the district court did not clearly err in denying him a reduction. With regard to Valencia, he also transported drugs, guarded the stash house, and secured the drugs for delivery. The district court's finding that his role was not minor was also not clearly erroneous. *See United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007) (concluding that district court did not commit clear error in denying adjustment where defendant's involvement, though brief, was "essential to the success and scope of the conspiracy.").

Valencia also argues that the court erred in denying, *sub silencio* (as he puts it), his request for a below-guidelines sentence based on the "substantially harsher punishment received in jail time during pre-trial detention." As an initial matter, though the court did not comment on this request, a sentencing judge is not required to discuss every argument that a litigant makes. *See, e.g., United States v. Vitrano*, 495 F.3d 387, 392 (7th Cir. 2007); *United States v. Vaughn*, 433 F.3d 917, 924 (7th Cir. 2006). We can infer that the judge considered all relevant factors when he has imposed a within-guidelines sentence, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), which we presume is reasonable. *See United States v. Allan*, 513 F.3d 712, 716 (7th Cir. 2008). Valencia could rebut that presumption by showing that the district court failed to consider one of the factors listed in 18 U.S.C. § 3553(a), but "[h]arsh or unpleasant conditions of pretrial confinement are not among the § 3553(a) factors." *United States v. Ramirez-Gutierrez*, 503 F.3d 643, 645-46 (7th Cir. 2007); *see United States v. Martinez*, No. 06-4147, 2008 WL 817099, at *3 (7th Cir. Mar. 27, 2008). Additionally, as we have noted, "[i]t would complicate sentencing enormously to require that the length of every sentence vary by the conditions of confinement." *United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007).

Here, Valencia asserts that his time spent in a Wisconsin prison was harsher because (1) family visits and calls from Wisconsin were less likely and shorter than those at the MCC in Chicago, and (2) the quality of medical and dental care at the Wisconsin facility was substandard. These conditions are not so exceedingly harsh that we could even consider disturbing the broad discretion that the Bureau of Prisons enjoys in determining where to detain defendants. *See* 18 U.S.C. § 3621(b); *see also Ramirez-Gutierrez*, 503 F.3d at 646 ("Absent truly egregious conditions, the pretrial confinement of [the defendant] raises neither a meritorious nor a substantial issue for sentencing purposes.").

The judgments of the district court are AFFIRMED.