In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2357

THOMAS P. VITRANO,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-cv-257—**Rudolph T. Randa**, *Judge.*

ARGUED JANUARY 12, 2011—DECIDED JUNE 21, 2011

Before KANNE and TINDER, *Circuit Judges,* and
HERNDON, *District Judge.*[*]

TINDER, *Circuit Judge.* The appellant, Thomas P. Vitrano,
is no stranger to this court. In fact, this is his third
stop here (so far) as a result of a single but admittedly
illegal possession of a shotgun. Several compounding

[*] The Honorable David R. Herndon, Chief Judge of the United
States District Court for the Southern District of Illinois, sitting
by designation.

events have occurred since Vitrano was last before us in 2007. He found (or fabricated) a document with the potential to upend his armed career criminal status and passed it along to his attorney, who died before authentication of the document was completed. Vitrano then found (or fabricated) another such document, which he used as the primary basis for a *pro se* 28 U.S.C. § 2255 motion. The government examined both documents and not only opposed his § 2255 motion but also filed new criminal charges against him relating to the allegedly fraudulent nature of the documents. In the meantime, the Supreme Court clarified the landscape of the armed career criminal statute, *see Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687 (2009), and Vitrano moved to amend his § 2255 motion to take advantage of the new ruling. The government decried Vitrano's motion to amend as an impermissible "second or successive" § 2255 motion. The district court agreed and dismissed Vitrano's case. Though we are not without reservations about the premises of Vitrano's § 2255 motion, we conclude that the district court erred by not allowing the proceedings to run their course before deeming a subsequent filing "second or successive." We therefore vacate and remand.

Following his plea of guilty to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), while subject to a domestic abuse injunction to boot, *id.* § 922(g)(8)(B), Vitrano was sentenced to 120 months' imprisonment, the statutory maximum, *see* 18 U.S.C. § 924(a)(2). The government challenged Vitrano's sentence, arguing that he should have instead faced a statutory minimum of at

least 180 months' imprisonment because he had three prior "violent felony" convictions that rendered him subject to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). (The relevant prior convictions were for escape and reckless endangerment.) We agreed, *see United States v. Vitrano*, 405 F.3d 506, 510 (7th Cir. 2005), and remanded the case so the district court could resentence Vitrano pursuant to the ACCA. Vitrano's Guidelines range under the ACCA was 235-293 months, but the district court imposed an above-Guidelines sentence of 360 months' imprisonment after hearing evidence that Vitrano sent an ex-girlfriend live pipe bombs as a "birthday present" and brutally abused other women. Vitrano appealed, and we affirmed. *See United States v. Vitrano*, 495 F.3d 387 (7th Cir. 2007).

Dissatisfied with the threefold increase in his sentence, Vitrano moved to vacate it pursuant to 28 U.S.C. § 2255. In his *pro se* filing, Vitrano asserted that his Fifth Amendment rights had been violated and that he had received ineffective assistance of counsel at various stages of his criminal proceeding. He also contended that the district court erred in sentencing him as an armed career criminal. Vitrano claimed that he had recently located a discharge certificate fully restoring the civil rights he lost in connection with a 1977 conviction for reckless endangerment; if valid, such a certificate would render the conviction uncountable for ACCA purposes regardless of whether it constituted a "violent felony." *See* 18 U.S.C. § 921(a)(20); *Buchmeier v. United States*, 581 F.3d 561, 563-64 (7th Cir. 2009) (en banc). Vitrano explained that his friend and former business

associate, Scott Valona, discovered Vitrano's original discharge certificate among some business records around the time Vitrano's second appeal was coming to a close. According to an attached affidavit from Valona, Valona found the certificate and, at Vitrano's request, sent a copy to Vitrano and the original to Vitrano's attorney.[1] Vitrano's attorney sent the alleged original to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for authentication and testing, and it remained there at the time Vitrano filed his § 2255 motion.

The district court ordered the government to respond to Vitrano's ineffective assistance and ACCA claims. *See* R. Governing § 2255 Proceedings for the U.S. Dist. Cts. 4(b). The government encountered some difficulty in doing so because Vitrano refused to turn over the pertinent portions of Attorney Barrett's files. There was also another wrinkle: Vitrano now claimed that he, not the ATF, had possession of the original discharge certificate, which he had personally "laminated" with scotch tape. The government moved for discovery of these items and for permission to conduct forensic testing on both alleged discharge certificates. Because of the complexity of the ensuing discovery dispute, the district court appointed counsel for Vitrano. *See id.* 6(a). Vitrano continued his opposition to the government's requests

---

[1] Attorney Paul Barrett represented Vitrano in the district court (including at both sentencings) and in both of his direct appeals in this court. Barrett died in mid-2007, several months before Vitrano initiated the instant § 2255 proceeding.

through his counsel, but was ultimately unsuccessful in preventing their discovery.

The government thereafter subjected both alleged discharge certificates—the one held by the ATF and the one Vitrano laminated with clear tape—to a battery of tests. It also interviewed Attorney Barrett's former paralegal, Vitrano's friend Scott Valona, and several long-time employees of the Wisconsin Department of Corrections, the purported issuer of the certificates. The government's forensic tests, coupled with Valona's recantation of his earlier affidavit and testimony from the other witnesses, led it to conclude that both discharge certificates were "provably fake"—"inconsistent with the standard forms submitted in: format, printing method, form designation, font size, and paper type." (The record includes many more colorful details about the certificates that emerged from the government's investigation, but we need not delve into them for the purposes of this appeal.) Not surprisingly, the government filed an explicit opposition response to Vitrano's § 2255 motion, and shortly thereafter obtained an indictment charging Vitrano with perjury, 18 U.S.C. § 1623(a), and two counts of corrupt influence, 18 U.S.C. § 1512(b)(1) & (c)(2), in connection with the allegedly forged discharge certificates.

Upon learning of these new criminal charges, the district court sua sponte ordered the proceedings held in abeyance until the criminal case was resolved. After about six months, the district judge, at the request of another district judge who was presiding over the forged

certificate criminal case,[2] lifted the stay and "invite[d]" Vitrano to file a reply brief in support of his § 2255 motion. (The stay had been entered before the time allowed for filing a reply had expired.)

Vitrano instead sought leave to amend his § 2255 motion pursuant to Federal Rule of Civil Procedure 15(a). In his motion to amend and accompanying brief in support, Vitrano invoked *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687 (2009), and contended that his escape conviction should not have been considered a "violent felony" for ACCA purposes. Vitrano also challenged the propriety of treating his reckless endangerment convictions as violent felonies. He included a proposed amended § 2255 motion with these filings; it made no mention of ineffective assistance of counsel or the alleged discharge certificates.

The government opposed Vitrano's motion to amend, contending that it was in substance a second or successive § 2255 motion over which the district court lacked jurisdiction absent certification from this court. *See* 28 U.S.C. § 2255(h); *id.* § 2244(b)(3). The government argued that by not filing a reply to its scathing response to his initial § 2255 filing, Vitrano had abandoned the motion "in the face of looming defeat," *Johnson v. United States*, 196 F.3d 802, 804 (7th Cir. 1999) (citing *Felder v. McVicar*,

---

[2] A jury convicted Vitrano on all three counts. As of the argument in this appeal, he had not yet been sentenced, though his counsel informed us at oral argument that Vitrano plans to challenge the convictions in this court.

113 F.3d 696 (7th Cir. 1997)), and was therefore barred from filing what was effectively a second § 2255 motion without first obtaining our permission, *see* 28 U.S.C. § 2255(h); R. Governing § 2255 Proceedings for the U.S. Dist. Cts. 9.

The district court agreed with the government and simultaneously dismissed Vitrano's original § 2255 motion as abandoned and denied his motion to amend as an unauthorized second or successive collateral attack. The district court also denied Vitrano's request for a certificate of appealability, reasoning that no certificate could issue with respect to Vitrano's attempted amendment because it was an unauthorized successive collateral attack. *See Sveum v. Smith*, 403 F.3d 447, 448 (7th Cir. 2005) (per curiam). Vitrano then sought a certificate of appealability from this court. We granted his request and invited the parties to brief both the substantive *Chambers* issue and the issue of whether Vitrano's motion to amend was in fact a successive petition over which the district court lacked jurisdiction. We need only concern ourselves with the latter here.

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), prisoners are entitled to a single unencumbered opportunity to pursue collateral review. The AEDPA prohibits prisoners from filing a second or successive § 2255 motion unless they obtain certification to do so from the court of appeals. *See* 28 U.S.C. § 2255(h). The problem is that the AEDPA does not define "second or successive." And counting from one to two in this context is not quite as elementary as it may seem;

numerically second filings only trigger the second or successive prohibition if they follow a filing that "counts" as the prisoner's first (and only) opportunity for collateral review. *See Johnson*, 196 F.3d at 805; *see also Potts v. United States*, 210 F.3d 770, 770 (7th Cir. 2000) ("[I]t [is] vital to determine whether a previous petition (or motion) was 'the real thing' that ought to subject the petitioner or movant to" AEDPA's limitations.); *O'Connor v. United States*, 133 F.3d 548, 550 (7th Cir. 1998) ("[I]t is essential to know what happened to the initial petition in the district court."). A § 2255 motion need not be adjudicated on the merits to "count" as a prisoner's first motion for AEDPA purposes. *Felder*, 113 F.3d at 697. A prisoner who voluntarily dismisses a § 2255 motion, for instance, may find himself out of luck when he tries to file a second. *Compare Felder*, 113 F.3d at 698 (voluntarily dismissed motion "counts" when dismissed in the face of impending defeat), *with Garrett v. United States*, 178 F.3d 940, 942-43 (7th Cir. 1999) (voluntarily dismissed motions do not "count" when withdrawn for further development before government files response).

"Drawing these lines can be difficult." *Johnson*, 196 F.3d at 804. Indeed, more complexities arise where, as here, the numerically second filing is not on its face a § 2255 motion. Then we must also examine the substance of the filing to determine whether it is in fact a § 2255 motion that might be second or successive. *See Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004) ("Prisoners cannot avoid the AEDPA's rules by inventive captioning. Any motion filed in the district court that imposed sentence, and substantively within the

scope of § 2255 ¶ 1, *is* a motion under § 2255, no matter
what title the prisoner plasters on the cover. Call it a
motion for a new trial, arrest of judgment, mandamus,
prohibition, coram nobis, coram vobis, audita querela,
certiorari, capias, habeas corpus, ejectment, quare impedit,
bill of review, writ of error, or an application for a Get-Out-
of-Jail Card; the name makes no difference. It is sub-
stance that controls." (citations omitted)).

The district court determined that Vitrano's motion
to amend was really just a cleverly captioned second
motion. This conclusion rested on the district court's
concurrent conclusion that Vitrano had abandoned his
initial motion, thereby rendering his first motion one
countable for AEDPA purposes. *Cf.* Fed. R. Civ. P. 41(b).
While this outcome is more than understandable in light
of what appears to be the patently frivolous and
fraudulent nature of the bulk of Vitrano's initial § 2255
filing, the motion to amend could only have been a
second or successive petition if the first petition "counted"
at the time it was filed. But the proceedings concerning
the initial motion had not yet reached such a point.

As we explained in *Johnson*, "a proposal to amend
one's first motion is not a 'second' motion," *Johnson*, 196
F.3d at 804, at least when the first has not yet reached
a final decision, *see id.* at 805; *see also Rutledge v. United
States*, 230 F.3d 1041, 1051 (7th Cir. 2000) ("Until a final
ruling has been issued, a district court must consider a
petitioner's request to amend his § 2255 motion, though
the court need not grant the requested amendments.").
Restrictive as it is, "the AEDPA allows every prisoner

one full opportunity to seek collateral review. Part of that opportunity—part of every civil case—is an entitlement to add or drop issues while the litigation proceeds." *Johnson*, 196 F.3d at 805. Of course, that entitlement is far from boundless. It is circumscribed by Federal Rule of Civil Procedure 15(a), *see* R. Governing § 2255 Proceedings for the U.S. Dist. Cts. 12; *Johnson*, 196 F.3d at 805, which provides that courts should grant leave to amend freely only "when justice so requires," Fed. R. Civ. P. 15(a)(2). We reiterated in *Rutledge,* 230 F.3d at 1051, and *Johnson*, 196 F.3d at 805, as we do here, that district courts have wide discretion in deciding whether to grant leave to amend. Justice generally does not require such leave if a movant demonstrates "undue delay, bad faith, or dilatory motive," or if undue prejudice to the opposing party would result. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Several of those factors are arguably present here, though we leave it to the district court to make that determination in the first instance.

The above discussion only applies if Vitrano's motion was in fact a motion to amend and not something else. *See Rutledge*, 230 F.3d at 1052 ("Rutledge's claim also fails for an independent reason: the letter in question is only a letter, and not a motion to amend."). The district court thought it was something else, largely because it bore little resemblance to the claims Vitrano initially raised. Therefore, the district court concluded, Vitrano plainly abandoned his original claims, which it simultaneously dismissed. That seems to us to put the cart a bit before the horse. Had Vitrano wanted to completely

abandon his original claims, he could have moved to dismiss them, *see Potts*, 210 F.3d at 771; *Felder*, 113 F.3d at 698, or simply stopped pursuing his case altogether. (Declining an opportunity to file a reply brief, which was required neither by the applicable rules or the district court in this case, may be foolish but does not constitute abandonment of one's claims.) Instead, he took an intermediate route; only if the district court granted his motion to amend would his original claims have been supplanted. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void."). Otherwise, he would be stuck with his feeble (and perhaps, at least in part, fraudulent) original claims. Taking the motion to amend path is in this sense a gamble; some might even call it game play. *Cf. Garrett*, 178 F.3d at 943 (distinguishing the situation in *Garrett* from that in *Felder* by noting that there was no indication that Garrett was attempting to "obtain a tactical advantage in the face of impending defeat"). But that is why district courts are vested with such wide discretion when it comes to evaluating the merits of Rule 15(a)(2) motions to amend; if a motion doesn't pass the sniff test, i.e., reeks of bad faith or dilatory motive, the district court is permitted to deny it and hold the plaintiff to his original complaint. The district court did not give Vitrano's motion to amend that consideration. Instead, it assumed that Vitrano was abandoning his initial claims altogether merely by filing the motion. Maybe that was his ultimate intent, but until the

district court rules on the motion to amend, and Vitrano makes his next move, we cannot know for sure.

The judgment of the district court is VACATED. This case is REMANDED for consideration of Vitrano's motion to amend and any further proceedings required as a consequence of that decision, such as adjudication of the merits of his original or amended § 2255 motion.