In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1282

THOMAS VITRANO,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cv-00257-RTR—**Rudolph T. Randa**, *Judge.*

ARGUED FEBRUARY 28, 2013—DECIDED JULY 1, 2013

Before MANION, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* This case requires us to consider whether the district court abused its discretion in denying Thomas Vitrano's motion to amend his 28 U.S.C. § 2255 petition. For the reasons that follow, we find no abuse of discretion and affirm.

## I. BACKGROUND

Vitrano was convicted pursuant to his guilty plea of possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and

possessing a firearm while subject to a domestic abuse injunction, *id.* § 922(g)(8)(B). He was sentenced to 120 months' imprisonment. *See* 18 U.S.C. § 924(a)(2). The government challenged the sentence, arguing that Vitrano should have faced a statutory minimum of at least 180 months' imprisonment because of three prior "violent felony" convictions that subjected him to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). (The prior convictions were for escape and recklessly endangering safety.) We agreed and remanded for resentencing. *See United States v. Vitrano,* 405 F.3d 506 (7th Cir. 2005). Although Vitrano's ACCA guidelines range was 235-293 months, the district court imposed an above-guidelines sentence of 360 months. Vitrano appealed and we affirmed. *See United States v. Vitrano,* 495 F.3d 387 (7th Cir. 2007).

On March 20, 2008, Vitrano moved to vacate his sentence pursuant to 28 U.S.C. § 2255. In his *pro se* filing, he asserted that his Fifth Amendment rights had been violated, that he had received ineffective assistance of counsel, and that the district court had erred in sentencing him as an armed career criminal. Vitrano claimed that he had recently located a discharge certificate fully restoring the civil rights he lost in connection with a 1977 conviction for endangering safety; if valid, the certificate would render the conviction uncountable for ACCA purposes, regardless of whether it constituted a "violent felony." *See* 18 U.S.C. § 921(a)(20); *Buchmeier v. United States,* 581 F.3d 561, 563-64 (7th Cir. 2009) (en banc). In the course of the proceedings, Vitrano claimed the existence of two different original discharge

certificates. Forensic testing of both certificates along with a witness's recanted testimony and testimony from other witnesses led the government to conclude that both certificates were "provably fake." *Vitrano v. United States*, 643 F.3d 229, 232 (7th Cir. 2011) ("*Vitrano III*"). So the government opposed Vitrano's § 2255 motion, and Vitrano was indicted with perjury and two counts of corrupt influence in connection with the discharge certificates. *See* 18 U.S.C. § 1623(a); 18 U.S.C. § 1512(b)(1) & (c)(2). The § 2255 proceedings were held in abeyance on June 5, 2009, pending resolution of the criminal case. On December 15, 2009, the district court "invite[d]" Vitrano to file a reply in support of his § 2255 motion.

Instead of filing a reply, however, on January 12, 2010, Vitrano, represented by counsel, sought leave to amend his § 2255 motion. He argued that under *Chambers v. United States,* 555 U.S. 122 (2009), his escape conviction is not a "violent felony" for ACCA purposes. He also argued that his convictions for reckless endangerment did not qualify as violent felonies. His proposed amended § 2255 motion failed to assert ineffective assistance of counsel and made no mention of the alleged discharge certificates. The government opposed the motion to amend, contending that by not filing a reply to his initial § 2255 filing, Vitrano had abandoned the motion "in the face of looming defeat" and was barred from filing what was effectively a second or successive § 2255 motion without first obtaining this court's permission. *See* 28 U.S.C. § 2255(h); R. Governing § 2255 Proceedings for the U.S. Dist. Cts. 9.

The district court agreed with the government, dismissed Vitrano's original § 2255 motion as abandoned, and denied his motion to amend as an unauthorized second or successive collateral attack. On appeal, we observed that the district court's conclusion that Vitrano had abandoned his original claims "put the cart a bit before the horse." *Vitrano III*, 643 F.3d at 234. We explained that "[h]ad Vitrano wanted to completely abandon his original claims, he could have moved to dismiss them, or simply stopped pursuing his case altogether." *Id.* (citations omitted). We held that the motion to amend did not constitute a "second or successive" § 2255 petition because the initial motion had not been conclusively decided, and we remanded for consideration of the motion to amend. *Id.* at 233-34.

On remand, the district court denied Vitrano's motion to amend. The court cited bad faith and dilatory motive and explained: "By abandoning the claims in his original motion, Vitrano's amendment is an attempt to chart an entirely different course in the face of evidence that his original claims are without merit." The court determined that this was "meant to evade the limitation on second or successive motions"—"to avoid adjudication on the merits of his initial claims, thereby obtaining a 'tactical advantage in the face of impending defeat.'" (quoting *Garrett v. United States*, 178 F.3d 940, 943 (7th Cir. 1999)). The court gave Vitrano an opportunity to make his "next move"—ordering him to file a reply brief in support of his original motion, or move to voluntarily dismiss the case. Vitrano chose the latter option, and the district court entered judgment dismissing the action.

## II. DISCUSSION

We must decide whether the district court abused its discretion in denying Vitrano's motion to amend his § 2255 petition. "An abuse of discretion occurs when a district court resolves a matter in a way that no reasonable jurist would, or when its decision strikes us as fundamentally wrong, arbitrary or fanciful." *United States v. Purnell*, 701 F.3d 1186, 1189 (7th Cir. 2012) (quotation and citation omitted). We will reverse a denial of leave to amend "only if no reasonable person could agree with [the district court's] decision." *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011) (quotation and citation omitted).

Vitrano argues that the district court erred in denying his motion because the court relied on a determination that Vitrano acted in bad faith in bringing his original § 2255 petition. (He assumes for purposes of this appeal that the original petition was brought in bad faith.) Vitrano claims that his motion to amend was brought in good faith and is his only chance to present his new claims—that his convictions for escape and reckless endangerment are not violent felonies for purposes of the ACCA—to the court. The government responds that the denial of the motion to amend was reasonable because Vitrano was trying to avoid adjudication on his original and fraudulent claims by seeking to "amend" rather than dismissing them. The government submits that this intent is confirmed by Vitrano's subsequent dismissal of the original claims. Because the proposed amended claims are entirely new claims and unre-

lated to the original claims, the government argues that the district court's finding of bad faith was justified. Alternatively, the government argues that the proposed amended claims are untimely and without merit.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "allows every prisoner one full opportunity to seek collateral review. Part of that opportunity—part of every civil case—is an entitlement to add or drop issues while the litigation proceeds." *Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999). Nevertheless, "that entitlement is far from boundless. It is circumscribed by Federal Rule of Civil Procedure 15(a) . . . which provides that courts should grant leave to amend freely only 'when justice so requires.' " *Vitrano III*, 643 F.3d at 234 (quoting Fed. R. Civ. P. 15(a)(2)). A district court has "wide discretion" in deciding whether to grant leave to amend. *Id.*; *see also Johnson*, 196 F.3d at 805 ("This is not to say that the judge is required to permit the amendments."). "Justice generally does not require such leave if a movant demonstrates 'undue delay, bad faith, or dilatory motive.' " *Vitrano III*, 643 F.3d at 234 (quoting *Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC*, 499 F.3d 663, 666 (7th Cir. 2007)); *see also Rutledge v. United States*, 230 F.3d 1041, 1051 (7th Cir. 2000) ("A district court can refuse to let the defendant amend the petition for reasons such as delay.").

The propriety of the proposed amendment should be viewed in light of AEDPA, which governs § 2255 proceedings and imposes tight limits on second or successive petitions. *See Suggs v. United States*, 705 F.3d

279, 285 (7th Cir. 2013), *cert. denied*, 81 U.S.L.W. 3637 (U.S. May 13, 2013) (No. 12-978). Under AEDPA, second or successive motions must be authorized by the court of appeals. *See* 28 U.S.C. §§ 2244, 2255(h); R. Governing § 2255 Proceedings for the U.S. Dist. Cts. 9; *United States v. Obeid*, 707 F.3d 898, 901 (7th Cir. 2013). The federal courts should "police attempted end-runs around the successive petition limitations of § 2255." *Hare v. United States*, 688 F.3d 878, 880 n.3 (7th Cir. 2012); *cf. Graham v. Johnson*, 168 F.3d 762, 780 (5th Cir. 1999) (noting that AEDPA "'incorporates reforms to curb the abuse of the statutory writ of habeas corpus'") (quoting H.R. Conf. Rep. No. 104-518, at 111 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944, 944)).

Vitrano is correct that it is the motion to amend that must be made in bad faith. But he errs in asserting that the district court relied on bad faith that was not relevant to his motion to amend. As the government aptly describes it, the court relied "on the disconnect between the original motion and the proposed 'amend-ment' to find that Vitrano was not really amending the original motion, but was instead supplanting it entirely to evade" AEDPA's restrictions on second or successive motions. The proposed amended claims are not amendments in any fair sense of the word; they are not intended to "save" or supplement the original claims whatsoever. *Cf. Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999) (stating that "amendment should be permitted unless it will not save the com-plaint"). Rather, the proposed amendment is in-tended to substitute entirely one petition for another

and avoid the consequences of Vitrano's actions in pursuing the original, fraudulent claims.

Had Vitrano intended to amend his original claims, he could have supplemented them and pursued both the original claims and the new *Begay* claims. *See Begay v. United States*, 553 U.S. 137 (2008). Even if resolution of the amended petition would have been "relatively easy" as compared to an evaluation of the authenticity of the discharge certificates, nothing prevented Vitrano from pursuing both theories of relief. If Vitrano was wrong about whether his prior convictions counted as violent felonies under the ACCA, he could still prevail if he established that the civil rights he lost in connection with the 1977 conviction had been fully restored. (As we know, the ACCA requires three predicate offenses to support the sentence enhancement. 18 U.S.C. § 924(e)(1).)

The bad faith is in the attempt to supplant entirely the original claims to avoid a dismissal on the merits and thereby evade the limitation on second or successive motions. On the prior appeal, we noted that the district court had assumed "Vitrano was abandoning his initial claims altogether merely by filing the motion [to amend]." *Vitrano III*, 643 F.3d at 234. We observed that "[m]aybe that was his ultimate intent, but until the district court rules on the motion to amend, and Vitrano makes his next move, we cannot know for sure." *Id.* Now that the district court has denied the motion and given Vitrano the opportunity to pursue his original claims, and Vitrano has declined to file a reply in support of and

voluntarily dismissed his original petition, we can be sure that he intended to abandon his original claims altogether.

The district court did not abuse its discretion in denying Vitrano's motion to amend his § 2255 petition when he was abandoning his original claims in the face of defeat and attempting an end-run around AEDPA's limitations on second or successive motions. We do not impute bad faith to Vitrano's counsel who did what he could to bring what might have been a good claim under *Begay*. The bad faith is Vitrano's own, and a result of his abuse of the writ in pursuing a fraudulent petition. That said, the district court's decision to deny Vitrano "a tactical advantage in the face of impending defeat," *Garrett*, 178 F.3d at 943, is within the bounds of reasonableness.

Moreover, the amended § 2255 motion is untimely. Under 28 U.S.C. § 2255(f)(3), a motion is timely if filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The right Vitrano asserts—the right not to receive an enhanced sentence based on an incorrect understanding of the term "violent felony"—was first recognized by the Supreme Court in *Begay*. *Cf. Narvaez v. United States*, 674 F.3d 621, 625 (7th Cir. 2011) (stating that "the right not to receive an enhanced sentence based on an incorrect understanding of the term 'crime of violence' . . . was recognized by the Supreme Court in

*Begay* and *Chambers*"). *Begay* held that to qualify as a "violent felony" under the residual clause of the ACCA, a crime must be "roughly similar, in kind as well as in degree of risk posed, to the examples" listed in the residual clause, that is, burglary, arson, extortion, or crimes involving the use of explosives. 553 U.S. at 142-43. Thus, a crime must "present[] a serious potential risk of physical injury to another" and "involve purposeful, 'violent,' and 'aggressive' conduct*." Id.* at 142-45. (The Supreme Court later deemed the "purposeful, violent, and aggressive" language as merely descriptive of the result in *Begay*. *Sykes v. United States*, 131 S. Ct. 2267, 2275-76 (2011).)

   *Chambers* held that the Illinois "failure to report" crime was not a "violent felony" under the ACCA because it does not "involve conduct that presents a serious potential risk of physical injury to another" and "amounts to a form of inaction" rather than "purposeful, 'violent,' and 'aggressive' conduct." 555 U.S. at 128. *Chambers* is an extension of and follows from *Begay*. *See Berry v. United States*, 468 F. App'x 924, 925 (11th Cir. Mar. 22, 2012); *cf. United States v. Jones*, 689 F.3d 696, 700 n.1 (7th Cir. 2012) (noting that *Chambers* utilizes a combination of the approaches of *James* and *Begay*), *cert. denied*, 133 S. Ct. 895 (2013). Indeed, Vitrano's argument relies heavily on *United States v. Templeton*, 543 F.3d 378 (7th Cir. 2008) (holding convictions for escape under Wisconsin law did not necessarily constitute crimes of violence), *United States v. Smith*, 544 F.3d 781 (7th Cir. 2008) (holding convictions for criminal recklessness under Indiana law did not constitute violent felonies

under the ACCA), and *United States v. Bishop*, 341 F. App'x 239, 240 (7th Cir. 2009) (holding second-degree reckless endangerment under Wisconsin law is not a crime of violence under the career-offender guideline), all of which rely on *Begay,* and none of which rely on *Chambers*. Reliance on these authorities lends support to the conclusion that the right Vitrano asserts was initially recognized in *Begay*, not *Chambers*.

And even if there is an argument that the right Vitrano asserts with respect to his escape conviction was initially recognized in *Chambers* (and we do not agree with such a proposition, *see Templeton*, 543 F.3d at 383 ("A walk-away is not a crime of violence under *Begay*.")), the same cannot be said with respect to his two convictions for endangering safety. The right not to be sentenced under the ACCA for a crime of recklessness was triggered by *Begay*. *See Newbern v. United States*, No. 10-64-DRH, 2012 WL 6699118, at *7 (S.D. Ill. Dec. 26, 2012) ("[T]he right not to receive an enhanced sentence based [on] an incorrect understanding that reckless discharge of a firearm . . . qualified as a crime of violence for purposes of career offender status was 'initially recognized' in *Begay*, not *Chambers*."). Furthermore, even assuming that the motion to amend was timely with respect to the escape conviction, Vitrano would run into concerns of dilatoriness in asserting his claims with respect to the endangering safety convictions. And the district court did conclude that dilatory motive was relevant to its decision to deny leave to amend.

Vitrano had until one year after the date of *Begay* to file his amended § 2255 motion. *Begay* was decided on

April 16, 2008. Vitrano filed his motion for leave to amend on January 12, 2010—more than one year after *Begay*. Thus, his proposed amended claims are barred as untimely, and the district court's denial of leave to amend is further justified based on the futility of the proposed amendment. *See, e.g.*, *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012).

### III.  CONCLUSION

The district court's judgment is AFFIRMED.