In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2912

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

THOMAS VITRANO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:09-cr-00140 — **Lynn Adelman**, *Judge.*

ARGUED FEBRUARY 19, 2014 — DECIDED APRIL 4, 2014

Before POSNER, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* This case marks the fifth time Thomas Vitrano has appeared before us since his conviction for possessing a firearm as a felon and while under a domestic abuse injunction. He has already exhausted his appeals for those initial convictions and sentence, which he challenged in part by fabricating a Wisconsin discharge certificate. Now he

appeals his subsequent conviction for the fraud and perjury he committed in those prior proceedings.

## I. BACKGROUND

Over a decade ago, Thomas Vitrano pled guilty to one count of possessing a firearm as a felon and one count of possessing a firearm while subject to a domestic abuse injunction. He was sentenced to 30 years in prison under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), because he had prior convictions for escape and reckless endangerment.[1]

In March 2008, Vitrano filed a pro se motion under 28 U.S.C. § 2255, seeking a reduction in his sentence because his business partner, Scott Valona, had allegedly found a discharge certificate relating to his 1977 conviction for reckless endangerment. If valid, the certificate would have purged the reckless endangerment conviction from Vitrano's criminal history for ACCA purposes and thus precluded the statute's application to him.

---

[1]   The application of the ACCA generated a series of appeals by both Vitrano and the government. *See United States v. Vitrano*, 405 F.3d 506 (7th Cir. 2005) (on government appeal, holding that the ACCA applied because Vitrano could not produce a discharge statement whose language could reasonably be read to have restored all of his civil rights and remanding for resentencing); *United States v. Vitrano*, 495 F.3d 387 (7th Cir. 2007) (on defense appeal from resentencing, affirming the 30-year sentence imposed under the ACCA); *Vitrano v. United States*, 643 F.3d 229 (7th Cir. 2011) (vacating the district court's dismissal of Vitrano's 2255 motion); *Vitrano v. United States*, 721 F.3d 802 (7th Cir. 2013) (affirming the district court's dismissal of Vitrano's 2255 motion on remand).

But the certificate was not valid. Both the copy Vitrano sent to the Bureau of Alcohol, Tobacco, and Firearms and the copy Vitrano kept for himself were "provably fake." Although Vitrano (who referred to himself in a letter to Valona as "the laminator") attempted to prevent forensic testing of his copy of the document by covering it in Scotch tape, it differed from valid discharge certificates in printing method, formatting, font size, and paper type. With this evidence before it, the district court denied Vitrano's § 2255 motion.

After determining that the certificate was fake, the government charged Vitrano with perjury, 18 U.S.C. § 1623(a), attempting to corruptly influence official proceedings, 18 U.S.C. § 1512(c)(2), and threatening a witness, 18 U.S.C. § 1512(b)(1).

The case proceeded to a jury trial. Testifying for the government, Valona explained that Vitrano had sent him the forged certificate; Valona had not found it, as Vitrano had alleged in previous filings. The government also played two phone calls Vitrano made to Valona from prison. Vitrano objected to the phone calls on Confrontation Clause grounds, citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). The court ruled the calls admissible, finding that there had "been enough testimony introduced … to establish [that they were Vitrano's phone calls] to get them admitted."

The jury found Vitrano guilty on all counts.

## II. ANALYSIS

Vitrano asserts that the district court violated his rights under the Confrontation Clause by admitting his phone calls

to Valona without subjecting the technician who pulled the phone calls to cross-examination. In the alternative, he argues that the district court's chain-of-custody analysis was faulty and should not have resulted in the admission of the challenged phone calls.

*A. Confrontation Clause*

The Sixth Amendment's Confrontation Clause prohibits the admission of testimonial hearsay against a criminal defendant unless two conditions are met: (1) the declarant must be unavailable to testify and (2) the defendant must have had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Clause applies only to "testimonial" statements, a category that has proven difficult to define. *Davis v. Washington*, 547 U.S. 813, 823–26 (2006) (Confrontation Clause applies only to testimonial statements); *United States v. Turner*, 709 F.3d 1187, 1194 (7th Cir. 2013) (assuming that report was testimonial in the absence of clear Supreme Court precedent).

In *Melendez-Diaz v. Massachusetts*, the Supreme Court held that "certificates of analysis"—sworn statements in which state analysts asserted, based on laboratory testing, that a seized substance was cocaine—were testimonial. 557 U.S. at 309–11. The certificates fell within the "core class of testimonial statements" because they were essentially affidavits and were thus "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Id.* at 310–11 (quoting *Davis*, 547 U.S. at 830). The sworn nature of these statements was not essential; rather, it was dispositive that the certificates were "'incontrovertibly … affirmation[s]

made for the purpose of establishing or proving some fact' in a criminal proceeding." *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2716–17 (2011) (quoting *Melendez-Diaz*, 557 U.S. at 310).

Vitrano seizes on the *Melendez-Diaz* line of cases, asserting that the prison technician who prepared the CDs should have been called to testify at trial. But Vitrano has failed to identify what precisely the "missing" analyst did or said that was hearsay, much less testimonial hearsay. Unlike in *Melendez-Diaz* and its progeny, we have no report in which the prison technician states, after analysis, that Vitrano was urging Valona to lie or threatening him. Perhaps there was a certification that the calls were stored and pulled in the normal fashion, but Vitrano does not identify it.[2]

Preparing an exhibit for trial is not in itself testimonial; we have previously ruled that "an expert who gives testimony about the nature of a suspected controlled substance may rely on information gathered and produced by an analyst who does not himself testify." *Turner*, 709 F.3d at 1190. There was thus no need for the government to call the technician who prepared Exhibit 9 as a witness, and no violation of Vitrano's Sixth Amendment rights.

*B. Chain of Custody*

In the alternative, Vitrano argues that the government did not lay an appropriate chain of custody foundation for the

---

[2] In any event, such a certification would likely be non-testimonial. *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (certification asserting that records submitted were records kept in the ordinary course of business was non-testimonial).

phone calls. He asserts that a proper foundation would have included the testimony of the investigating officers, citing *United States v. Collins*, 715 F.3d 1032 (7th Cir. 2013).

We review the district court's evidentiary rulings on the chain of custody of physical exhibits under the lenient abuse-of-discretion standard. *United States v. Prieto*, 549 F.3d 513, 524 (7th Cir. 2008). At trial, the government must show that the exhibit being offered is in substantially the same condition it was in at the time of the crime. *United States v. Lee*, 502 F.3d 691, 697 (7th Cir. 2007). When the evidence is in police custody, a presumption of regularity applies; in the absence of evidence to the contrary, we assume the police did not tamper with the evidence. *United States v. Tatum*, 548 F.3d 584, 587 (7th Cir. 2008). And any gaps in the chain of custody go to the weight given the evidence, not its admissibility. *Prieto*, 549 F.3d at 524–25.

In Vitrano's case, the government established the chain of custody for the phone calls through the testimony of Lieutenant Troy Fardel and ATF Special Agent John Adamson. Fardel oversaw the prison's response to the subpoena for the phone calls. He testified that he directed a technician to search for phone calls made using Vitrano's unique "TAC" number. The prison's phone system used voice-recognition technology to prevent inmates from using other TAC numbers when making phone calls. Upon receiving the phone call recordings from the technician, Fardel made two CDs that contained a total of 27 calls. Fardel then gave these CDs to Special Agent Adamson, who maintained custody of the discs and created Exhibit 9 for trial.

This evidence, coupled with the presumption of regularity, was more than sufficient for the trial court to conclude that the phone calls were in substantially the same condition that they were at the time they were made. The district court did not abuse its discretion in admitting the phone calls.

Vitrano also argues in his reply brief that the phone calls should not have been admitted because they were insufficiently authenticated. He did not make this argument in his initial brief before this court, and the issue is therefore waived. *United States v. Matchopatow*, 259 F.3d 847, 851 (7th Cir. 2001).

### III. CONCLUSION

Vitrano's attempt to shoehorn the facts of his case into our Confrontation Clause precedent fails, as does his chain of custody argument. We AFFIRM Vitrano's conviction.